NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MATIAS SALAS, | : : : | |
| Plaintiff, | : : | **Civil Action No. 16-2485 (SRC)** |
| v. | : : | **OPINION** |
| UNITED STATES OF AMERICA, et al., | : : | |
| Defendants. | : : | |

**CHESLER**, District Judge

  This matter comes before the Court upon the motion brought by Defendant United States of America ("Defendant" or the "Government") for partial dismissal of the Complaint filed by Plaintiff Matias Salas ("Plaintiff" or "Salas"). In brief, the Government moves to dismiss Plaintiff's tort claim exceeding the amount of the administrative claim filed by Salas pursuant to the Federal Tort Claims Act, on the grounds that the Court lacks subject matter jurisdiction over that portion of the claim. Salas has opposed the motion and cross-moved to increase his claim for damages to an amount exceeding the administrative claim. The Court has considered the papers filed by the parties. For the reasons that follow, the Court will grant the Government's motion to dismiss and deny Plaintiff's cross-motion.

I.  **BACKGROUND**

This personal injury action arises out of a November 22, 2014 motor vehicle accident in Newark, New Jersey. Three vehicles were involved in the accident: one operated by Plaintiff Salas; another vehicle driven by Al Miller, an employee of the United States Postal Service ("Postal Service"); and a taxicab operated by Defendant Raymundo Gallegos. Plaintiff Salas claims that the accident occurred as a result of Defendants' negligence and that it caused him to sustain personal injuries, including to his neck, back, and right shoulder.

Below, the Court summarizes the facts relevant to the issue presented on this motion, specifically, whether the Court has subject matter jurisdiction over Plaintiff's tort claim against the Postal Service insofar as it seeks damages above the sum set forth on the administrative claim he filed with the Postal Service.[1]

**A.  Plaintiff's Medical Treatment**

Salas sought medical care for his injuries beginning on December 2, 2014. Initially, he received chiropractic care and physical therapy. Salas then underwent an MRI in January 2015. The MRI of his spine showed posterior disk bulges at C3-4 and C4-5 and also at L3-4 and L5-

---

[1] Because it raises the issue of the Court's subject matter jurisdiction, this motion to dismiss is governed by Federal Rule of Civil Procedure 12(b)(1). A Rule 12(b)(1) motion may challenge jurisdiction on either the face of the complaint, i.e., because it "does not present a question of federal law," or on the facts of the case, i.e., because the facts "do not support the asserted jurisdiction." Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2012). The Rule 12(b)(1) motion at bar asserts a factual challenge, and thus the Court "can look beyond the pleadings to decide factual matters related to jurisdiction." Cestonaro v. United States, 211 F.3d 749, 752 (3d Cir. 2002). Moreover, "no presumption of truthfulness attaches to the allegations of the plaintiff" on a factually based attack on subject matter jurisdiction. CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008). The plaintiff bears the burden of demonstrating that subject matter jurisdiction exists. Id.

2

S1.[2] The MRI also showed injury to Plaintiff's right shoulder, including a partial tear of the tendon and joint effusion. In February 2015, Salas underwent further testing, specifically electromyography and a nerve conduction velocity test. Regarding his back and neck, the tests showed he suffered from moderate neuropathy affecting both legs and right C5-6 radiculopathy.

Plaintiff continued to undergo physical therapy, but his neck and back pain did not subside. He began to treat with a pain management specialist. Throughout 2015, Plaintiff received several epidural and facet injections to his lumbar spine, as well as two injections to his cervical spine. Salas also underwent two lumbar rhizotomy procedures, in March and April of 2015, respectively. His pain management provider noted that these interventions provided only moderate and temporary relief.[3]

On October 16, 2015, Salas had a consultation with spine surgeon Dr. Marc Cohen. Plaintiff reported persistent back pain and right leg radiculopathy. According to Dr. Cohen's notes, Salas also reported that he could only stand or sit for 25 minutes without pain, that he could only walk for 200 to 500 feet, and that any type of forward or lateral bending exacerbated the pain in his lower back. Dr. Cohen performed a physical examination of Salas and reviewed the medical records of his back pain treatment. Dr. Cohen advised Plaintiff that, in his opinion, conservative treatment had failed to address Plaintiff's condition. He recommended further

---

[2] The MRI report noted that the lumbar presentation of the 2014 films was compared to prior study records. The record reflects that Salas had a pre-existing lumbar injury, which he claims was significantly aggravated as result of the November 2014 motor vehicle accident.

[3] In 2015, Salas also underwent arthroscopic surgery and other procedures to treat his right shoulder injury. Although Plaintiff claims he injured his shoulder in the subject accident, the shoulder injury is not relevant to the issue of whether an increase in damages claimed by Plaintiff is warranted. The question before the Court focuses on the extent of Plaintiff's spinal injuries.

testing to evaluate the structural problem with Plaintiff's spine. Following Dr. Cohen's recommendation, Salas underwent a lumbar discography on November 20, 2015 and a post-discography CT scan the next day. The discogram revealed concordant pain pattern in the L5-S1 disc, the CT scan was interpreted by Dr. Cohen as showing an annular tear with disc protrusion.

On January 28, 2016, Plaintiff saw Dr. Cohen for a follow-up visit. Salas reported at this visit that he continued to experience pain in his lower back, which radiated to his right leg, as well as associated tingling and numbness. Salas rated his pain level a 10 out of 10. Plaintiff also stated that the treatment he had thus far explored over the course of the preceding year had provided only transient relief. Dr. Cohen was of the opinion that surgery was indicated to remove the pain source.

At this appointment, Dr. Cohen and Plaintiff discussed the various surgical and non-surgical treatment options available. Dr. Cohen counseled Salas in detail about the goals and risks of surgery, outlining the complications and potential negative outcomes in detail. Additionally, he specifically warned Salas that the surgery does not completely eliminate symptoms and in fact the condition of some surgical patients worsens. Dr. Cohen's notes of the January 28, 2016 consultation with Plaintiff summarize the discussion, stating, among other things:

> I was very clear to the patient, explaining to him that in my experience any patient undergoing a lumbar fusion surgery will always have some form of residual complaints and symptoms. This would be indicative of "fusion disease." Therefore, I would never consider the surgical procedure to be curative.
>
> I also told the patient that in my experience, for whatever reason, a small percentage of patients actually worsen. If their complaints and symptoms worsen with respect to severity, they may necessitate further surgical intervention with respect to fusion surgery.

(Jani Decl., Ex. E at 2-3.) In light of the various issues associated with surgery, Dr. Cohen counseled Plaintiff that surgery should be pursued only if he feels his symptoms have become unmanageable. After his January 28, 2016 evaluation by Dr. Cohen, Plaintiff continued to pursue non-surgical treatment, including a third cervical epidural injection received on January 30 and physical therapy.

Plaintiff returned to Dr. Cohen on May 5, 2016. At this visit, he informed Dr. Cohen that he had sought a second opinion from another provider, who advised against surgery and instead recommended continued physical therapy. Plaintiff reported to Dr. Cohen that, in spite of the treatment he had been receiving, his severe pain persisted. Dr. Cohen advised Plaintiff to consider whether to proceed with surgery or, alternatively, try to "manage with his continued state and treatment." (Jani Decl., Ex. F.) After this consultation, Plaintiff continued to pursue non-surgical options, including a lumbar percutaneous disc compression in June 2016 and lumbar rhizotomy procedures in November 2016 and February 2017.

On February 23, 2017, Salas sought further treatment from Dr. Cohen. Salas reported that he had been trying to avoid surgery but his back pain had worsened substantially. Dr. Cohen again discussed Plaintiff's surgical and non-surgical treatment options. Ultimately, on May 17, 2017, Plaintiff underwent spinal surgery. Dr. Cohen performed an open lumbar decompression and fusion surgery at L5-S1. The surgery did not resolve all of Plaintiff's complaints, and on November 17, 2017, he had a spinal cord stimulator implanted into his back in a further effort to relieve his pain.

5

Plaintiff took a leave of absence from work for his May 2017 surgery. At the time of the accident, Salas had been employed full-time by Toyota working in a warehouse facility, and other that a short leave for his shoulder surgery, had not previously lost time at work due to his injuries. Following the May 2017 back surgery, Salas was not able to return to his job at the Toyota warehouse. On June 5, 2018, the Social Security Administration declared Salas to be occupationally disabled. According to Plaintiff's affidavit, his employment with Toyota formally terminated on January 30, 2019.

### B. Plaintiff's Administrative Claims

On April 13, 2015, the Postal Service received Plaintiff's first administrative claim, submitted on Standard Form 95 Claim for Damage, Injury, or Death ("SF-95") dated March 11, 2015. (Hereinafter, this claim will be referred to as the "March 2015 SF-95.") The March 2015 SF-95, signed by attorney Timothy Madden on behalf of Salas, sought damages for "orthopedic, psychologic[al] and neurologic" injuries stemming from a November 22, 2014 motor vehicle accident involving Salas and a vehicle operated by a Postal Service employee. (Herbst Decl., Ex. A at 2.) The form stated that Salas sought $10,000 in property damage and $1,000,000 for his personal injuries but also set forth, in the section marked "total," that the amount of the claim was $110,000.[4] By letter of April 23, 2015, the Postal Service acknowledged receipt of the March 2015 SF-95 and requested that Salas's counsel provide records in support of the claim.

---

[4] Salas maintains the total sum certain on the administrative claim must have been a clerical error. The Government notes that the March 2015 SF-95 was accompanied by a letter from Mr. Madden expressing a settlement demand of $110,000, which is consistent with the total amount of the claim on the form.

6

Salas thereafter filed an amended administrative claim, dated October 25, 2015 (hereinafter, the "October 2015 SF-95"). Like the initial claim, the October 2015 SF-95 was submitted by Mr. Madden on behalf of Salas. It similarly sought damages for "orthopedic and neurological residuals to neck, back, and shoulder" as a result of the November 2014 motor vehicle accident. (Herbst Decl., Ex. D.) The October 2015 SF-95 stated that Plaintiff sought $10,000 in property damage and $250,000 in personal injury damages, indicating on the form's applicable section that the total amount claimed was $260,000. Receipt of the October 2015 SF-95 claiming $260,000 was acknowledged by the Postal Service by letter dated November 10, 2015.[5]

The Postal Service denied Plaintiff's administrative claim by letter dated February 16, 2016. The letter stated that because investigation of the November 22, 2014 accident had failed to establish a negligent act or omission by the Postal Service, it would not accept liability for the damages claimed. The Postal Service further advised that Salas had a period of six months from the date the denial letter was mailed to seek reconsideration of the decision or, alternatively, file suit in federal court.

---

[5] Another SF-95 that is also dated October 25, 2015 appears to have been produced by Plaintiff in the discovery phase of this suit. That form claims a total of $360,000 in damages. Plaintiff does not, however, claim that he filed the form claiming $360,000 with the Postal Service, and according to the Affidavit of Kimberly A. Herbst, Supervisor and Tort Examiner/Adjudicator for the Postal Service's National Tort Center, the Postal Service did not receive it. It is black-letter law that the FTCA requires an administrative claim to be properly presented to the appropriate agency. 28 U.S.C. § 2675(a). The burden is on the plaintiff to show that an administrative claim has been filed, that is, actually received by the agency. Lightfoot v. United States, 564 F.3d 625, 628 (3d Cir. 2009). In light of the foregoing, the Court can disregard the competing October 25, 2016 claim form.

On or about the same date that the decision letter was issued, the Postal Service received a letter dated February 9, 2016 from Mr. Madden. In this letter, counsel informed the Postal Service that plaintiff had "decided to undergo the surgical procedure previously recommended by his treating surgeon." (Herbst Decl., Ex. H.) Mr. Madden requested that evaluation of the administrative claim be postponed, so that that an amended administrative claim could be submitted once counsel received additional information from the surgeon. The letter did not set forth a sum certain or contain any information concerning the amount of additional damages which would be sought from the Postal Service in light of Plaintiff's decision to undergo surgery.

### C. Plaintiff's Civil Action

Salas did not seek reconsideration the February 16, 2016 denial of his administrative claim but instead proceeded to file the instant civil action on May 3, 2016, alleging a negligence claim against the Postal Service and the postal carrier involved in the accident. The parties engaged in discovery, and the docket shows that they appeared before the Court for numerous conferences. During the course of this lawsuit, Plaintiff retained new counsel, and Mr. Madden was substituted by Plaintiff's current counsel, the law firm of Stark and Stark.

The magistrate judge most recently held a settlement conference on September 17, 2020. According to Plaintiff's brief, Plaintiff demanded $3,000,000 to settle the action, accounting for Plaintiff's extensive and permanent physical injuries as well as his lost wages. The Government

8

countered that damages are capped at $260,000, in accordance with the administrative claim filed by Salas. [6] This motion to limit damages accordingly and to dismiss any claim above that amount, as well as Plaintiff's cross-motion to increase the claim were filed shortly thereafter.

## II. DISCUSSION

Plaintiff's negligence claim against the Postal Service is, in fact, a claim against the United States, and as such is governed by the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq. The FTCA "operates as a limited waiver" of the sovereign immunity of the United States. White-Squire v. U.S. Postal Serv., 592 F.3d 453, 456 (3d Cir. 2010). Under the FTCA, the United States may be liable for the tortious conduct of federal government employees occurring within the scope of their employment. See 28 U.S.C. § 1346(b) (providing that, under the same circumstances applicable to private parties, the United States shall be similarly liable "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."). The cause of action provided by the FTCA, 28 U.S.C. § 1346(b), is the *exclusive*

---

[6] This is the sum certain set forth in the October 2015 SF-95 denied before Plaintiff initiated this lawsuit. Plaintiff appears to have submitted an additional SF-95, dated April 14, 2017, which seeks $1,010,000 in damages as a result of the November 22, 2014 motor vehicle accident. Although Plaintiff does not argue that this post-lawsuit administrative claim has any effect, the Court nevertheless notes that it does not validly amend Plaintiff's administrative claim or enlarge the Court's jurisdiction over this FTCA action. It is well-established that a court's subject matter jurisdiction over an FTCA claim is limited by the statute's *pre-suit* exhaustion requirement, which includes the obligation to present a sum certain to the appropriate agency. 28 U.S.C. § 2675(a); cf. Priovolos v. Federal Bureau of Investigation, 686 F. App'x 150, 152 (3d Cir. 2017) (affirming the district court's dismissal of an FTCA action for lack of subject matter jurisdiction, notwithstanding the plaintiff's submission of an administrative claim after filing suit, because "the subsequent filing and denial of a claim after suit has been commenced does not overcome the failure to exhaust administrative remedies and premature filing of the complaint.").

remedy "for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1). Because the FTCA expresses the consent of the United States to be sued for certain claims, "the terms of such consent define the court's subject matter jurisdiction" and must be "strictly construed." White-Squire, 592 F.3d at 456; see also United States v. Mitchell, 445 U.S. 535, 538 (1980) ("holding that the United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.") (citation omitted).

The FTCA imposes a strict jurisdictional requirement that an administrative claim be properly filed and exhausted prior to initiating a civil action. 28 U.S.C. § 2675(a); see also McNeil v. United States, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."). To present a proper administrative claim, a plaintiff must file a written notice of his or her claim with the appropriate agency and make a demand for a sum certain. 28 U.S.C. § 2675(a), (b); 39 C.F.R. § 912.5(a) (setting forth administrative claim requirements applicable to the Postal Service). The FTCA's "sum certain" requirement is jurisdictional and cannot be waived. White-Squire, 592 F.3d at 459. A lawsuit may be filed in federal district court within six months from the date on which the agency mails notice of its denial of the administrative claim. 28 U.S.C. § 2401; 28 U.S.C. § 2675(a). Alternatively, if the agency does not issue a final decision on the claim within six months of its filing, the claimant may treat this lack of disposition as a denial and proceed to file a civil action. 28 U.S.C. § 2675(a). Under the governing Postal Service regulation, an

administrative claim may be amended at any time before the following, as applicable: the claimant exercises the option to file a civil action after expiration of the six-month period in which the agency must decide the claim; the Postal Service pays the claim in full, or the agency issues its final written denial of the claim. 39 C.F.R. § 912.5(b).

Of particular relevance to the motion before the Court, the FTCA limits the damages a plaintiff may seek in a civil action brought pursuant to Section 2675. 28 U.S.C. § 2675(b). By the terms of the statute, damages are capped at the amount set forth in the administrative claim presented to the agency, that is, the SF-95 filed by a plaintiff. Id. (providing that an action "shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency"). The FTCA, however, provides an exception to this limit. It permits an increased claim to be made where it is "based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon proof of intervening facts, relating to the amount of the claim." Id. The burden is on a plaintiff to show that the exception set forth in Section 2675(b) applies. Schwartz v. United States, 446 F.2d 1380, 1381 (3d Cir. 1971).

The operative administrative claim on which the Court's jurisdiction is based is the October 2015 SF-95 presented to the Postal Service by Salas, through the attorney representing him at that time. Salas argues that the exception, permitting him to increase damages above the the administrative claim's sum certain, applies based on newly discovered evidence. Specifically, Salas points to two new pieces of evidence: (1) his 2017 spinal surgery and spinal stimulator implantation and their related consequences to his physical condition and (2) his 2018 permanent disability, resulting in an inability to maintain his livelihood as a warehouse worker. Plaintiff argues that his damages should not be capped at the $260,000 set forth in his administrative

11

claim because he "did not know the medical extent of his injuries when the SF-95 forms were submitted on March 11, 2015 and October 25, 2015." (Pl. Br. at 11.)

The question on these cross-motions is a narrow one: has Plaintiff met his burden of showing newly discovered evidence which was not "reasonably discoverable" or intervening facts, such that exceeding the FTCA's damages cap is warranted?

To determine whether a plaintiff may claim an increased amount of damages above the administrative claim, pursuant to the FTCA's exception in Section 2675(b), Circuit Courts of Appeals have employed three different approaches: the "worse-case prognosis" test, the "reasonably foreseeable/reasonably discoverable" test, and the "change in expectations" test. Park v United States, No. 17-13139, 2020 WL 4282731, at *3 (D.N.J. July 27, 2020); see also Bravo-Garcia v. United States, No. 13-2185, 2015 WL 224625, at *4-6 (D.N.J. Jan. 15, 2015) (summarizing each approach for evaluating the FTCA's damages cap exception). Under the worst-case prognosis test, utilized by the First and Fifth Circuits, a plaintiff may only amend a damages claim if the newly discovered evidence reveals facts which surpass the worst-case scenario that could have been anticipated by a plaintiff when he or she filed the administrative claim. Low v. United States, 795 F.2d 466, 471 (5th Cir. 1986); see also Bravo-Garcia, 2015 WL 224625, at *5 ("a plaintiff must predict not only what is within the reasonable universe of injuries or damages, but must assume the worst-case could occur in making a FTCA demand."). In other words, when employing the worst-case scenario to evaluate the Section 2575(b) exception, "[t]he mere fact that these dread consequences, feared from the beginning, had become more certain does not suffice to brand them 'newly discovered.'" Reilly v. United States, 863 F.2d 149, 172 (1st Cir. 1988); see also Low, 795 F.2d at 471 (reversing a jury verdict that

12

exceeded the amount of plaintiff's administrative claim in a medical malpractice case for injuries to a child during birth, finding that when she filed the claim, the child's mother "knew that that the worst-case prognosis for [the child] was one of great severity.") In contrast, the reasonably discoverable test "focuses on whether it was foreseeable that the plaintiff's injuries would worsen beyond the original claim." Bravo-Garcia, 2015 WL 224625, at *6. The reasonably discoverable test, applied by the Second, Fourth, Sixth, and Eighth Circuits, examines whether there is evidence that a plaintiff's injury, though known when he or she filed the administrative claim, "worsen[ed] in ways not reasonably discoverable by the claimant and his or her treating physician." Michels v. United States, 31 F.3d 686, 688 (8th Cir. 1994); see also Spivey v. United States, 912 F.2d 80, 84 (4th Cir. 1990) (holding that the district court properly allowed the plaintiff may amend her damages claim under Section 2675(b) based on its finding that the injury "could not have been diagnosed or included" in the administrative claim and the "full extent of [the] [p]laintiff's disability and future medical care and needs were either facts not reasonably discoverable at the time the administrative claim was [filed] or intervening facts.") The third, most lenient approach, taken by the Eleventh Circuit, is the change in expectations test, which tries to determine whether the plaintiff had, at the time the administrative claim was file, reason to believe that the injury would worsen or circumstances would change. Fraysier v. United States, 766 F.2d 478, 480 (11th Cir. 1985).

While the Third Circuit has not yet adopted a test to determine whether a plaintiff has demonstrated that there is "newly discovered evidence not reasonably discoverable," 28 U.S.C. § 2675(b), the majority of other circuits which have considered the issue have applied the reasonably discoverable/reasonably foreseeable test. See Park, 2020 WL 4282731, at *3. This

13

test has also been applied numerous times by district courts within the Third Circuit. See id. (collecting cases); but see Chamberlain v. United States, No. 11-1808, 2012 WL 136896, at *4 (D.N.J. Jan. 18, 2012) (denying the FTCA plaintiff's request to increase damages because she did not submit an administrative claim "which represented her worst-case scenario based on the injuries of which she was reasonably aware."). The District of New Jersey's Bravo-Garcia opinion surveyed all three approaches and, after careful consideration, found that the reasonably discoverable test was both the most practical and the best tailored to further the purpose of the FTCA's sum certain requirement. Bravo-Garcia, 2015 WL 224625, at *5-6. The court reasoned as follows:

> [U]nder the worst-case prognosis standard, a plaintiff cannot set forth a reasonable settlement value to the federal agency. Rather, he or she is forced to inflate all damage projections for fear of the inability to later amend the demand. This is neither conducive to efficient administrative processing nor settlement discussions. Further, the worst-case scenario approach is difficult to apply in practice because it requires a probing analysis into whether a reasonable doctor or patient did, or should have, projected the worst possible result for the plaintiff, even if that outcome is unforeseeable or even outlandish. . . . As to the change of expectations test adopted by the Eleventh Circuit, the Court believes the test is too subjective and difficult to apply.
>
> The reasonably discoverable approach best accommodates the competing interests in this context. While still fact intensive, the reasonably discoverable approach focuses on whether it was foreseeable that the plaintiff's injuries would worsen beyond the original claim. This approach is consistent with the language in Section 2675(b) which permits an amendment where the new evidence was not "reasonably discoverable."

Id. at *6 (citations omitted).

This Court agrees with this reasoning and will likewise apply the reasonably discoverable/foreseeable test to determine whether Plaintiff may avail himself of the exception set forth in Section 2675(b).[7]

Salas acknowledges that, when he filed his October 2015 SF-95, he was aware of injuries to his neck, back, and right shoulder, all of which he claims he sustained in the November 22, 2014 accident. Plaintiff nevertheless maintains that he could not have reasonably discovered the full extent of his injuries because complications did not materialize until long after the administrative claim was denied. He emphasizes that he did not undergo surgery until May 2017 and argues that he not could have foreseen the worsening associated with the need for surgery itself or the surgery's aftermath, in which he would require an additional invasive treatment and be deemed occupationally disabled.

The record, however, belies the claim that the severity of Plaintiff's injuries, in particular his spinal condition, was not reasonably foreseeable while the administrative claim before the Postal Service was still pending. From the time Salas initially sought treatment for injuries in December 2014 to the time the October 2015 SF-95 was filed, his condition consistently deteriorated. In addition to surgery on his right shoulder, Salas made repeated attempts to treat his spinal injuries through chiropractic care and physical therapy. Throughout 2015, he received a series of epidural injections to his cervical and lumbar spine. He also underwent two lumbar rhizotomy procedures. Plaintiff himself acknowledged that these conservative approaches had

---

[7] This Court notes that although the Government has urged the Court to apply the worst-case scenario test, maintaining it is the best suited to satisfy the requirement that the FTCA be "strictly construed," Livera v. First Nat'l Bank, 879 F.2d 1186, 1194 (3d Cir. 1989), it has argued in its motion that Plaintiff fails to qualify for the increased damages exception under either the more stringent worst-case scenario test or the reasonably discoverable test.

15

not been successful in achieving lasting relief. As early as October 16, 2015—one week before the October 2015 SF-95 was submitted to the Postal Service—Salas consulted a spine surgeon for an evaluation. The surgeon, Dr. Cohen, examined Salas, noted his history, and ordered a lumber discography to evaluate his condition. At the follow-up appointment on January 28, 2016, Dr. Cohen advised Plaintiff that his injuries were severe enough to indicate surgical treatment and made very clear to him what the risks and possible negative outcomes of surgery could be. During that visit with Dr. Cohen, Plaintiff not only discussed the option of spinal surgery but also reported to the doctor that he had continued to experience significant pain, which had not abated in spite of the various treatments he had undergone. Although Salas sought a second opinion and opted not to pursue surgery until some time later, he was clearly on notice by the end of January 2016 that his spinal condition was serious and indeed deteriorating. Given the facts known to Plaintiff, it was reasonably foreseeable that his injuries would require invasive treatments, that the outcomes of these treatments might not be fully successful in restoring Plaintiff's health or even substantially improving his condition, and that Plaintiff's injuries could leave him permanently disabled.

Importantly, Salas was in possession of these facts—his persistent and worsening pain, history of medical care to date, and the information provided by Dr. Cohen—before the Postal Service mailed notice of its denial of the administrative claim. Salas had the opportunity, before February 16, 2016, to amend the claim to increase damages. Indeed, Plaintiff was well aware of his ability to file an amended SF-95, having done so once before with regard to the claim arising out of the November 2014 accident.

16

Salas argues that the extent of his injuries could not be foreseen when his administrative claim was still pending because surgery was merely a possible option and he could not have predicted that he would ultimately face further invasive procedures, lasting damage, and a complete inability to return to his gainful employment. Salas emphasizes that in early 2016, he had received competing advice from medical providers regarding surgery and was therefore "unaware of the true nature of his injuries." (Pl. Br. at 12.) He further emphasizes that he continued working until May 2017, when he went on leave for his lumbar surgery, thus giving him no reason to foresee, when he filed his administrative claim, that he would ultimately be declared occupationally disabled.

Plaintiff's argument lacks both legal and factual support. First, Plaintiff appears to be arguing that the severity of his injuries was not reasonably foreseeable because surgical treatment and its potential consequences were not a certainty. The FTCA permits an increase to the administrative claim amount only if there is "newly discovered evidence not reasonably discoverable at the time of presenting the claim." 28 U.S.C. § 2675(b). It does not permit an increase on the grounds that negative outcomes of an expressly contemplated treatment for a known injury do not materialize until some later time. Plaintiff points to no legal authority that has permitted an FTCA plaintiff to avoid the damages cap under Section 2575(b) under such a lenient standard. Second, Plaintiff's attempt to cast his surgeries and permanent disability as too remote and outlandish to be anticipated does not square with the facts of this case. As the record shows, and as aptly summarized by the Government, Salas's "long history of unsuccessful pre-suit medical care gave [him] ample reason to believe that he might need to undergo additional medical treatment, including surgery, and that his injuries might force him to stop working his

17

physically demanding job as a warehouse manager." (Gov't Reply at 2.) Further belying Plaintiff's contention that the severity of his injuries was not reasonably foreseeable when his administrative claim was still pending, Plaintiff in fact advised the Postal Service in a February 9, 2016 letter that he would be filing another SF-95 in light of the consultation with a spinal surgeon. This letter suggests that Plaintiff in fact subjectively understood the extent of the injuries following his January 28, 2016 visit with Dr. Cohen. Plaintiff did not, however, include an amended SF-95 with that February 9 letter nor did he subsequently seek reconsideration of the Postal Service's denial of his administrative claim (the October 2015 SF-95) when it was issued approximately one week later.

In an alternative effort to avoid enforcement of the FTCA's cap on damages pursuant to Section 2675(b), Salas argues that he should not be bound by his October 2015 SF-95, claiming that his prior attorney filed it without his authorization. Salas asserts that Mr. Madden did not consult with him in preparing the administrative claim or explain the form to him. This argument is not only unpersuasive but wholly misplaced. The Court must note that Plaintiff filed this suit based on his filing of the October 2015 SF-95 and its February 16, 2015 denial by the Postal Service. The Court's very jurisdiction to entertain this suit is grounded upon the filing and exhaustion of that administrative claim. Plaintiff's argument would simultaneously rely on the administrative claim and disavow it. Obviously, he cannot have it both ways. Additionally, Plaintiff's contention that he did not authorize his prior attorney's filings goes, if anything, to the quality of that legal representation. The argument is simply unavailing in Plaintiff's attempt to obtain the benefit of the narrowly tailored exception to the FTCA's cap on damages.

Based on the record presented, Plaintiff has not demonstrated that, pursuant to Section 2675(b), there is newly discovered evidence or intervening facts which justify an increase in the sum certain stated in the administrative claim. To the contrary, the record indicates that Salas knew that his worsening condition had not responded to over a year's worth of numerous treatment approaches and was severe enough to warrant surgery. Further treatment, including surgery, and the possibility of permanent physical limitations was clearly within the reasonably foreseeable realm of possibilities, at a time when Salas could have presented another administrative claim with a greater sum certain to the Postal Service.

In short, Plaintiff has failed to meet the burden of showing that the strict and jurisdictional limitation on damages in an FTCA action should be set aside. He, and the Court, are bound by the sum certain set forth in his October 2015 SF-95.

### III.  CONCLUSION

Pursuant to 28 U.S.C. § 2675, the Court's subject matter jurisdiction is limited to the amount set forth in Plaintiff's administrative claim. For the reasons set forth above, the Court will grant the Government's motion to dismiss the FTCA claim insofar as it seeks damages in excess of $260,000. Plaintiff's cross-motion to increase his damages will accordingly be denied.

An appropriate Order will be filed.

                                                  s/ Stanley R. Chesler
                                                  STANLEY R. CHESLER
                                                  United States District Judge

Dated: January 11, 2021